UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO. H-92-177S |
| | § | |
| v. | § | JUDGE SIM LAKE |
| | § | |
| JACQUELINE TARSA LEBARON, Defendant | § | |

## PLEA AGREEMENT

The United States of America, by and through Jose Angel Moreno, United States Attorney for the Southern District of Texas and Richard D. Hanes and Ralph E. Imperato, Assistant United States Attorney, and the defendant, JACQUELINE TARSA LEBARON, and the defendant's counsel, David Adler, pursuant to Rule 11(c)(1)(A)&(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. The defendant agrees to plead guilty to Count Nine of the Superseding Indictment. Count Nine charges defendant with Conspiracy to Obstruct Religious Beliefs, in violation of Title 18, United States Code, Section 371. The defendant, by entering this plea agrees that she is waiving any right to have the facts

1

that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 371, is imprisonment for not more than 5 years, and a fine of $10,000. Additionally, the defendant may receive a term of supervised release after imprisonment of not more than three (3) years. Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release which may be imposed as part of her sentence, then defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, U.S.C. §§ 3559(a)(3) and 3583(e)(3). Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.

The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Fine and Reimbursement

4. Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release; if any is ordered.

5. Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.

6. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if she is requested to do so. In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following her sentencing.

## Waiver of Appeal

7. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined **on any grounds set forth in Title 18 U.S.C. § 3742**. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest her conviction or sentence by means of any post-conviction proceeding, **including but not limited to Title 28, U.S.C. §2255**.

8. In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

9. In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible

sentencing range under the sentencing guidelines that she may have received from her counsel, the United States or the Probation Office, is a prediction, not a promise, **did not induce her guilty plea**, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement. If the defendant instructs her attorney to file a notice of appeal at the time sentence is imposed, the government will seek specific performance of this provision.

### The United States' Agreements

11. The United States agrees to each of the following:

(a) If defendant pleads guilty to Count Nine of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will agree not to pursue any additional charges related to this case and dismiss all remaining counts of the original and superseding indictment as they pertain to this defendant.

(b) At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines;

(c) If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding her role in the offense if the defendant's offense level is 16 or greater.

(d) At the time of sentencing, the United States agrees to recommend a term of incarceration of five (5) years.

**United States' Non-Waiver of Appeal**

6

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and,

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a).

### Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the

sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14. Defendant represents to the Court that she is satisfied that her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court.

(c) At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, she could testify on her own behalf.

## Factual Basis for Guilty Plea

15. Defendant is pleading guilty because she _is_ guilty of the charges contained in Count Nine of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

In the 1970's Ervil LeBaron created a church called the Church of the First Born of the Lamb of God, while

9

simultaneously declaring himself to be a prophet of God. As the leader of this church, Ervil's directives and orders were considered the word of God. Ervil LeBaron taught his followers that anyone who was a traitor to his teachings or left the church should be put to death. These individuals were referred to as the "Sons of Perdition." Duane Chynoweth, Mark Chynoweth, and Ed Marston were members of the church. However, Duane, Mark and Ed left the church to pursue their own religious beliefs after Ervil LeBaron was convicted in the State of Utah for murder. While serving his prison term for murder, Ervil drafted a document which he named the "Book of the New Covenant" in which he stated that the Chynoweths and Marston had betrayed the Kingdom of God and had become "Sons of Perdition." Ervil ordered his remaining followers to murder the Chynoweths and Marston for betraying the Kingdom of God. The vast majority of Ervil's remaining followers consisted of his wives and many children. Ervil LeBaron died in prison in 1981, however, his orders to murder the "Sons of Perdition," contained in the Book of the New Covenant, were preached and taught to his followers after his death.

As leader of his father's church, Aaron LeBaron ordered that the "Sons of Perdition" be killed. Jacqueline Tarsa LeBaron (the defendant in our case) was also one of Ervil's

children and believed that the teachings of her father should be followed. In preparation for the killing of the "Sons of Perdition," Douglas Barlow and Richard LeBaron would steal pickup trucks from the southern United States, and Natasha LeBaron, Nicole LeBaron, Cynthia LeBaron, and Jacqueline Tarsa LeBaron would drive the vehicles across the border into Mexico where they would be sold. It was with the profits from this venture that the execution of Aaron LeBaron's order to kill the "Sons of Perdition" was financed.

In May of 1988, after having a vision, Jacqueline Tarsa LeBaron instructed her sister Cynthia LeBaron to travel to Houston and begin to prepare for the murders of the "Sons of Perdition." Jacqueline Tarsa LeBaron provided Cynthia with $500 to finance her trip. Jacqueline Tarsa LeBaron was instructed to do this by Heber LeBaron. Cynthia traveled by bus to Tucson, Arizona, and then took a flight to Dallas, Texas. From Dallas, she flew to Houston, Texas, where she met William Heber LeBaron and Patricia LeBaron. While in Houston, Cynthia, William Heber and Patricia located victims Mark and Duane Chynoweth in the course of planning their assassinations. Subsequently, William Heber, Cynthia and Patricia returned to Dallas, Texas, where the group met Douglas Barlow, Natasha LeBaron and Richard LeBaron. Natasha LeBaron provided the group with approximately $2,500,

derived from the group's auto theft activities, to assist in the planning of the murders. In the Dallas area, the group located Edward Marston so that he also could be killed. While planning the murders, the group stole pickup trucks and license plates from the Dallas area to be used in the course of the murders. They purchased suits, false beards, three handguns, holsters, marine radios, and costume makeup.

On June 27, 1988, William Heber LeBaron, with the direct assistance of his siblings Cynthia LeBaron, and Natasha LeBaron, entered a business located at 2102 Blaylock, Houston, Texas, and shot Mark Chynoweth three times, killing him. At approximately the same time, Richard LeBaron, with the direct assistance of his sibling, Patricia LeBaron, traveled to the 6000 block of Rena Street, Houston, Texas, where he met with Duane Chynoweth, and Duane's eight year old daughter, Jenny Chynoweth. During the course of this meeting, Richard LeBaron shot and killed both Duane and Jenny Chynoweth. At approximately the same time, Douglas Barlow entered an appliance business located in Irving, Texas, where he shot Edward Marston, who subsequently died of those injuries approximately four hours later.

### Breach of Plea Agreement

16. If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the

United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

17. Whether the defendant has breached any provision of this plea agreement shall be determined by the Court, whose judgment in that regard is final.

### Forfeiture

18. This plea agreement is being entered into by the United States on the basis of defendant's express representation that she will make a full and complete disclosure of all assets over which she exercises direct or indirect control, or in which she has any financial interest. Defendant agrees to forfeit whatever interest she may have in assets related to drugs, including those assets listed in the indictment.

19. Defendant consents to any agreed order of forfeiture or judgment, and further agrees to take all steps necessary to

pass clear title to forfeitable assets to the United States, including, but not limited to, surrendering of title, signing a consent decree, stipulating facts regarding the transfer of title and basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of defendant's assets to deliver all funds and records of such assets to the United States.

## Complete Agreement

20. This written plea agreement, including the attached addendum of defendant and her attorney, constitutes the complete plea agreement between the United States, defendant and her counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against her and that she is pleading guilty freely and voluntarily because she is guilty.

21. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on JUNE 16, 2011.

_____
Jacqueline Tarsa LeBaron
Defendant

Subscribed and sworn to before me on June 16, 2011.
DAVID J. BRADLEY
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

JOSE ANGEL MORENO
United States Attorney

By: _____
RICHARD D. HANES
Assistant United States Attorney
713/567-9375

By: _____
RALPH E. IMPERATO
Assistant United States Attorney
713/567-9384

_____
David Adler
Attorney for Defendant

15

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO. H-92-177S |
| | § | |
| v. | § | JUDGE SIM LAKE |
| | § | |
| JACQUELINE TARSA LEBARON, | § | |
| Defendant | § | |

PLEA AGREEMENT - ADDENDUM

I have fully explained to defendant her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____    6/16/11
David Adler                 DATE
Attorney for Defendant

16

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____      6/16/11
JACQUELINE TARSA LEBARON                    DATE
Defendant